UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CAROLYN G. RYCROFT, | Case No. 2:19-cv-00225-BNW |
| Plaintiff | |
| v. | **ORDER** |
| ANDREW SAUL,* Acting Commissioner of Social Security, | |
| Defendant | |

This matter was referred to the undersigned magistrate judge on consent under 28 U.S.C. § 636(c). (ECF No. 25.) The case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff Carolyn G. Rycroft's application for supplemental security income under Title XVI of the Social Security Act. The court reviewed Plaintiff's motion for summary judgment (ECF No. 18), filed July 2, 2019, and the Commissioner's response and cross-motion to affirm (ECF No. 21), filed July 25, 2019. Plaintiff did not file a reply.

**I.    BACKGROUND**

    **1.    Procedural History**

On November 18, 2014, Plaintiff applied for supplemental security income under Title XVI of the Act, alleging an onset date of January 25, 2011. AR[1] 210-218. Plaintiff's claim was denied initially and on reconsideration. AR 129-132, 139-144. A hearing was held before an Administrative Law Judge ("ALJ") on July 6, 2017. AR 41-75. On January 12, 2018, the ALJ

---

\* Andrew Saul has been substituted for his predecessor in office, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 15).)

issued a decision finding that Plaintiff was not disabled. AR 10-28. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review. AR 1-6. Plaintiff, on February 6, 2019, commenced this action for judicial review under 42 U.S.C. § 405(g). (*See* IFP App. (ECF No. 1).)

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner of Social Security*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

**2. Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The individual must also provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R.

§ 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires that the ALJ determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, 20 C.F.R. § 404.1509, then a finding of disabled is made. *Id*. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

The SSA must follow a special technique to evaluate mental impairments at steps two and three. *Id*. § 404.1520a. The special technique requires that the ALJ substantiate the presence of a

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference as long as they are consistent with the Social Security Act and regulations. *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

medically determinable impairment using pertinent symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe, and the analysis proceeds. *Id.* § 404.1520a(d)(1).

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See id.* § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. *Id.* § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. AR 12-28.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of November 18, 2014. AR 12.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: spine disorders, dysfunction of the major joints, and affective disorder. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13.

At steps two and three, the ALJ applied the requisite special technique to evaluate Plaintiff's mental impairments and found that these impairments cause mild limitation in understanding, remembering, or applying information; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself. AR 12. But the ALJ found that Plaintiff has no limitation in interacting with others. *Id*.

At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work: Plaintiff can sit about 6 hours in an 8-hour workday; she can stand or walk about six hours in an eight-hour workday; she can occasionally climb ladders, ropes, or scaffolds; she can frequently climb ramps and stairs; she can frequently balance, stoop, kneel, crouch, and crawl; she can occasionally lift or carry up to 20 pounds; and she can frequently lift or carry up to 10 pounds. AR 17. Plaintiff cannot do sustained overhead reaching. *Id*. She also must avoid

hazards. *Id*. Plaintiff further is limited to unskilled work with occasional contact with the public. *Id*. The ALJ also found that Plaintiff was unable to perform any PRW. AR 26.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. AR 26-27. Accordingly, the ALJ concluded Plaintiff was not under a disability at any time from November 18, 2014 through January 12, 2018, the date of the ALJ's decision. AR 28.

**3. Analysis**
   **a. Whether the ALJ erred by improperly rejecting the opinion of treating physician Dr. Kimberly Adams, M.D.**
      **i. The parties' arguments**

Plaintiff moves to remand this matter on grounds that the ALJ did not properly weigh the opinion of treating physician Dr. Kimberly Adams, M.D. She argues that the ALJ relied on the following two reasons for assigning "partial" weight to Dr. Adams' opinion, and that each reason is flawed because it is not "specific and legitimate": the doctor's opinion was (1) internally inconsistent and (2) inconsistent with the record. Accordingly, Plaintiff argues that the court should remand for an award of immediate benefits or, in the alternative, a correction of legal errors.

The Commissioner disagrees. He argues that the ALJ did not err in giving Dr. Adams' opinion only partial weight. This is because Dr. Adams' opinion was inconsistent with the record.[3] He also adds that even if the ALJ could have reached a different decision, it is not for the court to "'substitute its judgment for that of the [ALJ's].'"

   **ii. The ALJ's decision**

The ALJ gave "partial weight" to Dr. Adams' opinion. AR 26. The ALJ reasoned that

> [t]he opinions of Dr. Adams are internally inconsistent and not consistent with the record as a whole, e.g., clinical signs during examinations of the [Plaintiff] indicated normal vibratory sense, normal pinprick on the feet and normal sensation on the thenar

---
[3] The Commissioner does not discuss in his motion whether the ALJ erred in giving Dr. Adams' opinion only partial weight on grounds that her opinion was internally inconsistent.

> eminence and forearms. There was normal gait and normal tandem gait. The finger-nose, finger-nose-finger and rapid alternating movements were intact. There were no tremors at rest, on arm extension or abnormal movements. Handgrip was normal. Hip flexors and ankle dorsiflexion were normal (Exhibits 22F and 23F). Thus, the opinions are given partial weight.

AR 25-26.

### iii. How an ALJ may weigh opinion evidence

The ALJ's role is to consider the evidence, state an interpretation thereof, and make findings accordingly. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is not required to discuss every piece of evidence in the record. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). And an ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

But when faced with contradictory opinions, the ALJ must give specific and legitimate reasons supported by substantial evidence in the record to reject a treating physician's opinion. *Belanger v. Berryhill*, 685 F. App'x 596, 598 (9th Cir. 2017) (citing *Reddick*, 157 F.3d at 725). Similarly, if an ALJ gives a treating physician's opinion "little" or "partial" weight, the ALJ also must provide specific and legitimate reasons for doing so. *Burns v. Berryhill*, 731 F. App'x 609, 612 (9th Cir. 2018). The ALJ "can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.3d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Put another way, when discounting Dr. Adams' opinion, "[t]he ALJ must do more than offer h[er] conclusions. [Sh]e must set forth h[er] own interpretations and explain why [the other doctors' opinions], rather than . . . [Dr. Adams'], are

correct." *Reddick*, 157 F.3d at 725. This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision.

Finally, the court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Stout*, 454 F.3d at 1054. The court cannot affirm the ALJ's decision based on evidence that the ALJ did not discuss. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### iv. Whether the ALJ erred in weighing Dr. Adams' opinion evidence

Dr. Kimberly Adams, M.D. was Plaintiff's treating physician from about July 2013 through, at least, January 2017. *See, e.g.,* AR 715-727, 2086-2100. Dr. Adams treated Plaintiff at two facilities: Neurological Associates of Nevada and Kimberly Adams Practice. *See, e.g.,* AR 667, 672, 681-682; 715-727. On November 17, 2015, Dr. Adams completed a Physical Medical Source Statement. AR 1167-1170. The questionnaire provided a series of check boxes and short-answer questions allowing the doctor to indicate the severity of Plaintiff's conditions. *Id*.

Dr. Adams expressed several opinions that are important for evaluating the ALJ's decision: (1) Plaintiff takes medication that makes her drowsy and unable to function; (2) Plaintiff suffers from depression and anxiety; (3) Plaintiff is incapable of "low stress" work because of her anxiety and depression; (4) Plaintiff can walk zero city blocks without rest or severe pain; (5) Plaintiff can sit for thirty minutes before needing to get up; (6) Plaintiff can stand for fifteen minutes before needing to sit down or walk around; (7) Plaintiff can sit for about four hours in an eight-hour workday; (8) Plaintiff can stand or walk for about four hours in an eight-hour workday; (9) Plaintiff does not need an assistive device for occasional standing or walking; (10) Plaintiff needs between five and six unscheduled breaks in a workday because of muscle weakness, pain/paresthesias, numbness, chronic fatigue, adverse effects of medication, and abnormal restroom breaks; (11) Plaintiff needs to elevate her legs no higher than her knee during an entire eight-hour workday; (12) Plaintiff can occasionally lift or carry ten pounds or fewer;

(13) Plaintiff can rarely lift or carry twenty pounds; (14) Plaintiff can never lift or carry fifty pounds; (15) Plaintiff can rarely twist; (16) Plaintiff can never stoop, crouch, squat, climb stairs, or climb ladders; (17) Plaintiff can use her right hand to grasp, turn, and twist objects fifty percent of an eight-hour workday; (18) Plaintiff can use her right fingers to perform fine manipulations twenty-five percent of an eight-hour workday; (19) Plaintiff can use her right arm to reach overhead eighty percent of an eight-hour workday; (20) Plaintiff can use her left arm to reach in front of her body eighty percent of an eight-hour workday; (21) Plaintiff can use her left arm to reach overhead eighty percent of an eight-hour workday; (22) Plaintiff will be off task at least twenty-five percent or more of a workday; and (23) Plaintiff will miss more than four days per month from work. AR 1167-1170.

The ALJ offered two reasons for discounting Dr. Adams' opinions regarding Plaintiff's limitations: (1) they were internally inconsistent, and (2) they were inconsistent with the record as a whole. AR 25-26.

To support her conclusion, the ALJ listed the findings of several objective medical examinations (e.g., sensory, gait, and cerebellar exams) that Plaintiff completed. AR 26. But it is unclear to the court whether the medical examination findings are supposed to support the ALJ's conclusion that Dr. Adams' opinion was internally inconsistent, that Dr. Adams' opinion was inconsistent with the record as a whole, or both. This is so for two reasons.

First, the ALJ cited the results of the medical examinations in the same sentence that she concluded that Dr. Adams' opinions were both internally inconsistent and not consistent with the record as a whole.[4] AR 25-26. But the ALJ listed the examination results only after the second reason (i.e., Dr. Adams' opinion is not consistent with the record as a whole). AR 26. After

---

[4] The ALJ wrote, "The opinions of Dr. Adams are internally inconsistent and not consistent with the record as a whole, e.g., clinical signs during examinations of the [Plaintiff] indicated normal vibratory sense, normal pinprick on the feet and normal sensation on the thenar eminence and forearms. There was normal gait and normal tandem gait. The finger-nose, finger-nose-finger and rapid alternating movements were intact. There were no tremors at rest, on arm extension or abnormal movements. Handgrip was normal. Hip flexors and ankle dorsiflexion were normal (Exhibits 22F and 23F). Thus, the opinions are given partial weight." AR 25-26.

1  listing these findings, the ALJ ended her discussion on Dr. Adams and moved to discussing the
2  opinions of four other medical providers. AR 26.

3  Second, the exhibits the ALJ cited to—22F and 23F—include the records of multiple
4  medical providers, not just those of Dr. Adams. For example, Exhibit 22F includes the
5  impressions for a lumbar spine MRI Plaintiff underwent on January 20, 2015. *Id*. Radiology
6  Associates of Nevada interpreted the MRI, and Dr. Nader Beheshti, M.D. dictated the
7  impressions. AR 668. Dr. Michael Horan, M.D.—not Dr. Adams—is listed as the referring
8  doctor for the MRI. *Id*. Exhibit 23F, on the other hand, includes treatment notes by three
9  providers—Dr. Adams, Dr. Horan, and Mr. Isaac Tunnel, PA-C—for Plaintiff's six visits to the
10 Neurological Associates of Nevada between September 5, 2014 and February 16, 2015. AR 672-
11 685. Notably, Dr. Horan signed the notes for each of these six visits. *Id*.

12 For the purpose of the analysis, the court will accept that the ALJ intended the listed
13 medical examination findings to support both of her reasons for discounting Dr. Adams' opinion.

### (a) Whether Dr. Adams' opinion is internally inconsistent

15 First, the ALJ determined that Dr. Adams' opinion was internally inconsistent. AR 25.
16 Having reviewed the record, it is unclear to the court how the ALJ's cited examples (noted above)
17 support the ALJ's conclusion that Dr. Adams' opinion was internally inconsistent. For example,
18 the ALJ cited to Plaintiff's cerebellar exams that indicated Plaintiff's finger-nose, finger-nose-
19 finger and rapid alternating movements were intact. *See, e.g.,* AR 672, 676. Dr. Adams noted
20 that Plaintiff had at least 23 different work limitations (AR 1167-1170), and the cerebellar exam
21 findings could be relevant (or not) to more than one of these limitations. Without a detailed
22 explanation regarding how the objective examinations conflict with Dr. Adams' opinion, the
23 court cannot determine (without guessing) whether ALJ's reasons for determining that Dr.
24 Adams' opinion was internally inconsistent are legitimate.

25 The Commissioner is correct to argue that the ALJ is not required to use "'magic words'
26 when evaluating medical opinion evidence, and [c]ourts can draw 'specific and legitimate
27 inferences' from the ALJ's discussion." But such an inference is difficult to make in this case.
28 This is because (1) Dr. Adams opined that Plaintiff has at least 23 work limitations, but the ALJ

did not cite which of these limitations were contradicted by Dr. Adams' notes; (2) Dr. Adams did not complete the listed exams at each visit; and (3) Dr. Horan signed Dr. Adams' treatment notes that are found in Exhibit 23F. AR 26.

In short, an ALJ may discount a treating physician's opinion if it is contradicted by the physician's own notes. *See Morgan*, 169 F.3d at 603; *see also Connett,* 340 F.3d at 875 (a physician's opinion may be rejected if it is unsupported by the physician's treatment notes). But the ALJ must explain what the conflicting evidence was and her interpretation of this conflicting evidence. *Thomas*, 278 F.3d at 957 (citing *Magallanes*, 881 F.3d at 751). Here, the ALJ failed to meet this burden. As a result, the court cannot properly evaluate whether Dr. Adams' opinion was internally inconsistent.

### (b) Whether Dr. Adams' opinion is inconsistent with the record

Second, the ALJ found that Dr. Adams' opinion was contradicted by the record. The ALJ found that the medical examination findings located in Exhibits 22F and 23F established that Dr. Adams' opinion was inconsistent with the record as a whole. AR 26. As discussed in the previous section, although the ALJ included a list of "normal" medical examination findings, she failed to explain in detail what the conflicting evidence was and her interpretation of this conflicting evidence. *Thomas*, 278 F.3d at 957 (citing *Magallanes*, 881 F.3d at 751). For example, Exhibit 23F, to which the ALJ cited, has multiple medical records from different providers at the Neurological Associates of Nevada, including a November 7, 2014, re-evaluation that Mr. Tunell conducted. AR 678-679. Mr. Tunell found that Plaintiff had no abnormal involuntary movements and a normal cerebellar exam (i.e., finger-nose, finger-nose-finger and rapid alternating movements were intact)—the same findings as Dr. Adams. AR 678. He opined that Plaintiff had restless leg syndrome and chronic pain syndrome. AR 679. Additionally, Dr. Horan's notes, like those of Dr. Adams' and Mr. Tunell, also indicated that Plaintiff's finger-nose, finger-nose-finger and rapid alternating movements were intact. *See, e.g.,* AR 919. And Dr. Horan electronically signed Dr. Adams' treatment notes that are found in Exhibit 23F. But, whereas the ALJ assigned "partial" weight to Dr. Adams' opinion, the ALJ gave Dr. Horan's

opinion "substantial" weight because it was "based on knowledge of the [Plaintiff's] condition in providing her with treatment . . . ." AR 26.

Further, some of the evidence that the ALJ cited appears to actually support Dr. Adams' findings. For instance, Exhibit 22F includes the impressions for a lumbar spine MRI that Plaintiff completed in early 2015. AR 668-669. The reviewing doctor, Dr. Beheshti, opined that Plaintiff had mild central canal stenosis with bilateral minimal neural foraminal narrowing at L4-L5 caused by a minimal disc bulge and moderate ligamentum flavum and facet hypertrophy. AR 668. These impressions could be consistent with Dr. Adams' opinion that Plaintiff would require between five and six breaks during a workday or that she could only stand or walk for about four hours in an eight-hour workday. AR 1168. In all events, the ALJ's citations to the record do not allow the court to determine (without guessing) whether the ALJ's reasons for rejecting Dr. Adams' opinion were legitimate.

Accordingly, because the ALJ did not provide specific and legitimate reasons for discounting Dr. Adams' opinion, the court holds that the ALJ erred. *Nguyen*, 100 F.3d at 1464 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."); *see also Lewin*, 654 F.2d at 634 (The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based.").

The next step is to determine whether the ALJ's error is harmless. An ALJ's error is harmless only if it is found to be "inconsequential to the ultimate nondisability determination" and if the court "can confidently conclude that no reasonable ALJ, when [not making the same error] could have reached a different disability determination." *Stout*, 454 F.3d at 1055-1056; *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). This court cannot say with certainty that another ALJ, upon crediting Dr. Adams' opinion, would not have reached a different disability determination. Accordingly, the ALJ's error was not harmless.

### III. CONCLUSION AND ORDER

Accordingly, IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 18) is GRANTED.

IT IS FURTHER ORDERED that this case is remanded for further proceedings regarding the weighing of Dr. Adams' opinion and, in turn, any effect this may have on Plaintiff's residual functional capacity and what jobs, if any, Plaintiff can perform.

IT IS FURTHER ORDERED that the Commissioner's Response and Cross Motion to Affirm (ECF No. 21) is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Plaintiff and against the Commissioner.

DATED: March 17, 2020

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE